UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

WHITE CLOUD RANCH, LLC;
SAWTOOTH VALLEY VISTA, LLC;
EDWARD W. HUGHES and JULIA M.
HUGHES; JAMES B. MITCHELL and
MARY MITCHELL; THE LAWLER
FAMILY TRUST; and H HOOK, LLC,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. 4:21-CV-00110-DKG

**MEMORANDUM DECISION AND
ORDER RE: DEFENDANT'S
MOTION TO DISMISS (DKT 59)**

Before the Court is Defendant's Motion to Dismiss the Third Amended

Complaint. (Dkt. 59). The motion is fully briefed and ripe for the Court's consideration.

(Dkt. 62, 63). On April 4, 2024, the Court held oral argument and took the motion under

advisement. (Dkt. 65). For the reasons that follow, the Court will grant in part and deny

in part Defendant's Motion to Dismiss.[1]

---

[1] The parties have consented to proceed before a United States Magistrate Judge in this
matter pursuant to 28 U.S.C. § 636(c)(1) and Local Civil Rule 72.1(a)(1). (Dkt. 13).

**BACKGROUND**

Plaintiffs initiated this lawsuit seeking to adjudicate their claims of permanent easements, rights-of-way, and rights of access to a diversion on Fourth of July Creek, known as FJC3, and the related ditches carrying water from FJC3 to Plaintiffs' real properties and to Fisher Creek. (Dkt. 1, 56). FJC3 and the related ditches are located on land owned by the United States that is administered by the United States Forest Service (USFS).

Plaintiffs filed an Amended Complaint on August 11, 2021, in response to Defendant's first motion to dismiss. (Dkt. 16, 24). Defendant filed a second motion to dismiss the Amended Complaint, which the Court granted on May 13, 2022 following a hearing held on May 6, 2022. (Dkt. 27, 41, 42). Plaintiffs were afforded leave to amend and timely filed their Second Amended Complaint on June 10, 2022. (Dkt. 43). The case was stayed pending the Supreme Court's decision in *Wilkins v. United States*. (Dkt. 51). On April 3, 2023, the stay was lifted. (Dkt. 54). Plaintiffs filed their Third Amended Complaint on April 17, 2023. (Dkt. 56).

The Third Amended Complaint raises two claims for relief under the Quiet Title Act (QTA), 28 U.S.C. § 2409a.[2] Claim One alleges Plaintiffs possess rights-of-ways to

---

[2] There are two separate but similar cases filed before the undersigned: *Humphreys Family Limited Partnership, et al. v. United States*, 21-CV-109 (*Humphreys*); and *White Cloud Ranch, LLC, et al. v. United States*, 21-CV-110 (*White Cloud*). Both cases bring claims under the QTA. Claim One in both cases raise the same legal theory. *Humphreys* Claim Three raises the same legal theory as *White Cloud* Claim Two. The Government has filed a single, identical motion in both actions, and Plaintiffs have responded accordingly. While the Court will issue a separate Memorandum Decision and Order in each action, the Court's decisions are substantively the same.

the diversion and ditches in question based on the patent deeds issued to their predecessors in interest that conveyed title to their lands and appurtenances thereof, which included the diversion and ditches, pursuant to the Desert Land Entry Act of 1877, 43 U.S.C. § 321 *et seq*., (Desert Land Act); the Homestead Act of 1862, 43 U.S.C. § 161 *et seq*. (repealed 1976), (Homestead Act); and the Land Act of 1820, 43 U.S.C. § 671 *et seq*. (repealed 1976), (Land Act). (Dkt. 56 ¶¶ 51-56). Claim Two, alleges Plaintiffs possess rights-of-way to the diversion and ditches under the 1891 Ditch Act, 43 U.S.C. §§ 946-949, (1891 Act). (Dkt. 56 ¶¶ 57-69).

On May 19, 2023, Defendant filed the Motion to Dismiss presently before the Court seeking to dismiss both claims for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). (Dkt. 59). The Court finds as follows.

## LEGAL STANDARD

### 1. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction, possessing only those powers granted by the Constitution and statutes enacted by Congress. *United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Thus, a federal court cannot consider claims for which it lacks subject matter jurisdiction. A party may move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Additionally, a court may raise the question of subject matter jurisdiction *sua sponte* at any time during an action. *United States v. Moreno-Morillo*, 334 F.3d 819, 830 (9th Cir. 2003). Regardless of who

raises the issue, "when a federal court concludes that it lacks subject matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing 16 J. Moore et al., *Moore's Federal Practice* § 106.66[1], pp. 106-88 to 106-89 (3d ed. 2005)); Fed. R. Civ. P. 12(h)(3).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Here, Defendant presents a facial challenge to the Court's jurisdiction. (Dkt. 59 at 9).[3] In a facial attack, the challenging party "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal

---

[3] During the hearing, Defendant represented that its Rule 12(b)(1) motion is a facial challenge, but argued materials from outside the complaint could be considered as they are expressly referenced in the pleading. Defendant's briefing, however, sets forth the standard for a factual challenge and cites cases applying that standard. (Dkt. 59 at 9-10). Reconciling these inconsistent positions, the Court will analyze the motion as a facial challenge to subject matter jurisdiction based on Defendant's representation and because no extrinsic materials have been submitted relevant to the Rule 12(b)(1) motion. This distinction is not inconsequential, as the Court must apply different standards for facial and factual challenges to subject matter jurisdiction. *Mortensen v. First Fed. Sav. And Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1997) (emphasizing a "crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and…that attack the existence of subject matter jurisdiction in fact….."); *Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (In a factual challenge, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.").

matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

The party asserting federal jurisdiction bears the burden of proving subject matter exists. *Kokkonen*, 511 U.S. at 377; *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007) (The party asserting a claim against the United States bears "the burden of establishing that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress."). If the nonmoving party fails to meet its burden and the Court determines that it lacks subject matter jurisdiction, the Court must dismiss the action. Fed. R. Civ. P. 12(h)(3). "[I]n general, dismissal for lack of subject matter jurisdiction should be without prejudice." *Tijerino v. Stetson Desert Project, LLC*, 934 F.3d 968, 971 n. 2 (9th Cir. 2019). However, where the bar of sovereign immunity is absolute and cannot be cured, dismissal may be with prejudice. *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988).

## 2. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 554 (2007) (cleaned up). "This is not an onerous burden."
*Johnson*, 534 F.3d at 1122. A complaint "does not need detailed factual allegations," but
it must set forth "more than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).
If the facts pled are "merely consistent with a defendant's liability," or if there is an
"obvious alternative explanation" that would not result in liability, the complaint has not
stated a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678,
682 (2009) (cleaned up).

In deciding whether to grant a motion to dismiss, the court must accept as true all
well-pleaded factual allegations made in the pleading under attack. *Id.* at 678. A court is
not, however, "required to accept as true allegations that are merely conclusory,
unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State
Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal of a complaint without leave to
amend is inappropriate, however, unless it is clear that the complaint could not be saved
by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (noting that leave
to amend should be granted "unless [the court] determines that the pleading[s] could not
possibly be cured by the allegation of other facts").

## DISCUSSION

### 1. Motion to Dismiss Rule 12(b)(1) - Waiver of Sovereign Immunity

An action can be brought against the United States only where the federal
government waives its sovereign immunity. *Blackburn v. United States*, 100 F.3d 1426,
1429 (9th Cir. 1996). Absent a clear waiver of sovereign immunity, the Court is without

subject matter jurisdiction. *Block v. N. Dakota ex rel. Bd. of Univ. and Sch. Lands*, 461 U.S. 273, 280 (1993).

The QTA provides a limited waiver of sovereign immunity in a civil action to adjudicate a disputed title to real property in which the United States claims an interest. 28 U.S.C. § 2409a(a) ("The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest…."); 28 U.S.C. § 1346(f) (providing that district courts "shall have original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States"). Indeed, the QTA is the "exclusive means by which adverse claimants [can] challenge the United States' title to real property," *Alaska v. Babbitt*, 38 F.3d 1068, 1073 (9th Cir. 1994) (quoting *Block*, 461 U.S. at 286), and "applies to claims against the United States for rights of access, easements, and rights-of-way, as well as those involving fee simple interests" *Mills v. United States*, 742 F.3d 400, 405 (9th Cir. 2014). The QTA requires that the complaint "set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States." 28 U.S.C. § 2409a(d); *see Leisnoi, Inc. v. United States* (*Leisnoi I*), 170 F.3d 1188, 1191 (9th Cir. 1999) (recognizing §§ 2409a(a) & (d) impose conditions upon the waiver of sovereign immunity). The "particularity" requirement in section 2409a(d) "necessitates a great deal of specificity." *McMaster v. United States*, 731 F.3d 881, 897-898 (9th Cir. 2013).

"[T]wo conditions must exist before a district court can exercise jurisdiction over an action under the [QTA]: 1) the United States must claim an interest in the property at issue, and 2) there must be a disputed title to real property between the interests of the plaintiff and the United States." *Leisnoi, Inc. v. United States* (*Leisnoi II*), 267 F.3d 1019, 1023 (9th Cir. 2001) (discussing *Leisnoi I*, 170 F.3d at 1191). "If either condition is absent, the [QTA waiver of sovereign immunity]…does not apply and the district court lacks jurisdiction to entertain the action." *Leisnoi I*, 170 F.3d at 1191.

On this motion, the first condition is uncontested, as the rights-of-way claimed by Plaintiffs are located on land owned by the United States. Instead, Defendant challenges the second condition, arguing no disputed title has been shown. (Dkt. 59 at 10-13).

For title to be disputed under the QTA, the United States must have "adopted a position in conflict with a third party regarding that title." *Mills*, 742 F.3d at 405. "[T]o satisfy the 'disputed title' element of the QTA, a plaintiff must show that the United States has either expressly disputed title or taken action that implicitly disputes it." *Kane Cnty., Utah v. United States*, 772 F.3d 1205, 1212 (10th Cir. 2014); *see also Mills*, 742 F.3d at 405. While the QTA does not require the United States to place gates or signs restricting access, or to physically remove individuals from traveling along before a disputed title is found, there must be "more than notice of a mere possibility, in the future, [that] a right-of-way may be limited or access denied." *N. Dakota ex rel. Stenehjem v. United States*, 257 F.Supp.3d 1039, 1074 (D. N.D. 2017). "[A]ctions of the United States that merely produce some ambiguity regarding a plaintiff's title are insufficient to constitute 'disputed title." *Kane Cnty.*, 772 F.3d at 1212-14. "In construing

the scope of the QTA's waiver [of sovereign immunity], [courts] have read narrowly the requirement that the title at issue be 'disputed.'" *Mills*, 742 F.3d at 405.

Here, Plaintiffs are the current owners of real property irrigated by the diversion and ditches located on federal land, which are at issue in this litigation. Plaintiffs claim they possess pre-FLPMA[4] property rights to the diversion and ditches based on the land patents issued to their predecessors in interest, Idaho law, and the 1891 Act. (Dkt. 56).[5] Plaintiffs argue there is a dispute of title over their pre-FLPMA rights-of-way based on the USFS' initiation of Endangered Species Act (ESA) consultation in relation to another litigation filed in 2018 by the Idaho Conservation League (ICL) – *Idaho Conservation*

---

[4] Plaintiffs use the term "pre-FLPMA" in the pleading and briefing when referring to federal land statutes that pre-dated the Federal Land Policy Management Act of 1976, 43 U.S.C. § 1701 *et seq.* (FLPMA). (Dkt. 56, 62). FLPMA repealed the Homestead Act, and the rights-of-way provisions of the 1866 Act, and the 1891 Act, but preserved rights-of-way that were established under those statutes prior to FLPMA's passage. *Baker Ranches, Inc. v. Zinke*, 625 F.Supp.3d 1080, 1092 n. 2 (D. Nevada 2022); 43 U.S.C. § 1769. Plaintiffs claim their rights to the diversion and ditches pre-existed FLPMA.

[5] Plaintiffs also argue the USFS' failure to file a disclaimer and failure to acknowledge the source of title claimed by Plaintiffs further demonstrates the existence of a disputed title. (Dkt. 62 at 4-5). However, Plaintiffs have not identified any authority showing the USFS is required to take a position – either disclaiming or acknowledging – an assertion of title. Plaintiffs' argument seeks to create a disputed title based on the USFS' failure to take a position concerning their claims of title, when the United States has no obligation to do so. *Compare* 28 U.S.C. § 2409a(a) and (e) (subsection (a)'s requirements for conferring QTA jurisdiction are distinct from subsection (e)'s provision ceasing the jurisdiction of the district court upon the filing of a disclaimer of interest). The argument has been rejected by the Ninth Circuit, which held that no disputed title exists where the United States has not taken a position concerning title. *Alaska v. United States*, 201 F.3d 1154, 1164-65 (9th Cir. 2000) ("A title cannot be said to be 'disputed' by the United States if it has never disputed it."). Plaintiffs' attempt to distinguish the *Alaska* decision circles back to their argument that the USFS has taken a position in this case – that it has discretionary control over Plaintiffs' rights-of-way. (Dkt. 62 at 4-5). The Court addresses Plaintiffs' central contention – that a dispute of title exists based on the position taken by the USFS that it has discretionary control over the diversion and ditches – in the body of this decision.

*League v. United States Forest Serv. (ICL v. USFS)*, Case No. 1:18-cv-00044-BLW (D.

Idaho). (Dkt. 56 ¶¶ 11-29). In support of this assertion, the Third Amended Complaint

expressly and extensively relies on materials related to and filed in the ICL litigation.

(Dkt. 56 ¶¶ 13-15, 22, 24-27).[6]

The ICL litigation challenged the USFS' failure to complete ESA consultation

relevant to pending applications for Ditch Bill Easements (DBE) and Special Use Permits

(SUP) for twenty named diversions, including FJC3, that were filed in the 1990's. (Dkt.

56 ¶ 13). The Court there ordered the USFS to engage in formal consultation pursuant to

Section 7 of the ESA. *ICL v. USFS*, 2019 WL 2505031 (D. Idaho June 17, 2019). The

duty to consult under Section 7 of the ESA arises where the federal agency retains "some

discretion to influence or change the activity for the benefit of a protected species."

*Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1021-24 (9th Cir. 2012). The

parties in the ICL litigation entered into a Stipulation on Remedy to comply with the

---

[6] The Court takes judicial notice of the ICL litigation and filings, as they are referred to and relied on extensively in the Third Amended Complaint and the parties submissions to make up the basis for the claims, and because they are public records. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (a court may take judicial notice of its own records in other cases); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (matters of public record outside the proceeding such as motions filed in other cases proper subjects of judicial notice). As such, the Court may consider the ICL litigation and filings in deciding this facial motion to dismiss. *DeFiore v. SOC LLC*, 85 F.4th 546, 553 n. 2 (9th Cir. 2023) (holding that for a facial motion, "materials of which a district court may take judicial notice are not considered extrinsic evidence for purposes of Rule[] 12(b)(1)....") (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may ... consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.")). Further, the parties agreed during the hearing that the Court could properly consider the filings and materials related to the ICL litigation in deciding the motion to dismiss here.

Court's Order. *ICL v. USFS*, Order at Dkt. 43 (D. Idaho Nov. 19, 2019). In accordance with the Stipulation on Remedy, the USFS issued a Biological Assessment (BA) dated December 28, 2022. (Dkt. 56 ¶ 27).[7] The BA discusses the impacts of activities accessing and maintaining diversions and conduits in the action area relative to the ICL litigation, including FJC3, and proposes management actions consisting of issuing DBE and SUP with certain terms and conditions as contained in the operation and maintenance plans.

Plaintiffs contend that because the USFS is engaging in ESA consultation over their claimed rights-of-way when the Stipulation on Remedy provides that the USFS will not engage in ESA consultation if a diversion is located within a right-of-way over which it lacks discretionary control, a disputed title exists. (Dkt. 56 ¶¶ 24, 26-29). Plaintiffs maintain their pre-FLPMA rights-of-way are not subject to USFS discretion or control and, therefore, by engaging in ESA consultation the USFS disputes their claims of title. (Dkt. 56 ¶¶ 7, 28, 29, 50); (Dkt. 62 at 2-6). The United States does not contest that the USFS is engaged in ESA consultation of the rights-of-way at issue in this litigation. (Dkt. 59). Instead, Defendant argues the ESA consultation concerns only the DBE applications relevant to those rights-of-way and, therefore, does not establish that the USFS has taken any position regarding Plaintiffs' claimed pre-FLPMA rights-of-way - thus, no disputed title has been shown. (Dkt. 59 at 10-13); (Dkt. 63 at 1-2).

---

[7] The BA is located at: https://www.fs.usda.gov/detail/sawtooth/?cid=FSEPRD1084019. The Court takes judicial notice of the BA as it is a public record and may consider the BA in deciding this facial motion to dismiss for lack of subject matter jurisdiction because it is expressly relied on and incorporated in the Third Amended Complaint. Fed. R. Evid. 201; *Ritchie*, 342 F.3d at 908.

Having carefully reviewed the Third Amended Complaint and the parties

arguments, the Court finds the allegations, if true, could establish a dispute of title for

purposes of this facial motion to dismiss for lack of subject matter jurisdiction.[8] The

Stipulation on Remedy excludes from the ESA consultation requirement, any rights-of-

way over which the USFS lacks discretionary involvement or control. *ICL v. USFS*,

Stipulation on Remedy at Dkt. 43 (D. Idaho Nov. 19, 2019). Importantly, that exclusion

is not limited to the pending DBE applications, contrary to Defendant's argument here.

*Id.* at 4-5 (excluding ESA consultation for any water facilities that are determined to be

entirely within a right-of-way on federal land held pursuant to the 1866 Act <u>or other legal</u>

<u>authority</u>, over which the USFS lacks discretionary involvement or control). Thus, the

allegations that the USFS engaged in ESA consultation and issued a BA proposing

management actions for the rights-of-way at issue could demonstrate that the USFS

determined, at least implicitly, that it has discretion and control over the rights-of-way,

including pre-FLPMA rights-of-way, contrary to Plaintiffs' claimed property rights.[9]

---

[8] In so finding, the Court makes no determination concerning whether the USFS has in fact disputed title, has discretion and control over the claimed rights-of-way, has exercised discretionary control, or has violated any property rights Plaintiffs may hold in the rights-of-way. Nor does the Court find that Plaintiffs have the property rights that they claim. Those factual determinations go to the merits of the claims, which must be resolved in a later motion.

[9] The Stipulated Remedy and BA make this case distinct from the decisions in *Owyhee Cnty. v. United States*, 2022 WL 1591895 (D. Idaho May 19, 2022) and *Owyhee Cnty. v. United States*, 2024 WL 517895 (D. Idaho Feb. 9, 2024). There the Court found the BLM's exercise of management authority over the claimed rights-of-way until validated, alone, failed to show a disputed title as to the majority of the roads at issue because the BLM had not taken a position on the rights-of-way. Here, the allegations relevant to the Stipulated Remedy and BA are sufficient to demonstrate the existence of a disputed title for purposes of this motion, because they show the USFS may have taken a position adverse to Plaintiffs' claimed property rights by engaging in ESA consultation and proposing management actions over the rights-of-way.

Plaintiffs have therefore alleged facts of a dispute of title for purposes of this facial motion to dismiss. Whether Plaintiffs can prove a disputed title in fact exists and prove the other elements of their claims, are matters that must be resolved in a later motion. For these reasons, Defendant's motion to dismiss for lack of subject matter jurisdiction will be denied.

### 2.  Motion to Dismiss Rule 12(b)(6) – Failure to State a Claim

On this motion, Defendant argues Claims One and Two fail to state plausible claims for relief. (Dkt. 59). The claims allege that Plaintiffs possess rights-of-way to access and use the FJC3 diversion and related ditches located on federal land for the purpose of conveying water to Plaintiffs' property based on the land patents issued to their predecessors in interest and the 1891 Act. (Dkt. 56).

### A.  Claim One – Land Patent Statutes

Plaintiffs are the current owners of lands obtained by their predecessor in interest by virtue of land patents issued under the Desert Land Act, the Homestead Act, and the Land Act. (Dkt. 56 ¶¶ 1, 30-43). The Desert Land Act allows private individuals to acquire unreserved, unappropriated public desert lands upon assertion of intent to reclaim the lands for irrigated agriculture. 43 U.S.C. § 321. The applicant must have had a prior appropriation of the water right to be used for that purpose. The statute provides that any time within three years of the filing of the declaration, a patent shall issue upon satisfactory proof of the reclamation and remittance of proper payment. "[T]he Homestead Act of 1862…granted 160 acres of [unappropriated public] land to individuals who agreed to live on and make improvements to the land for five years…."

*United States v. Jenks*, 129 F.3d 1348, 1354 (10th Cir. 1997) (citing Act of May 20, 1862, ch. 75, 12 Stat. 392 (codified at 43 U.S.C. §§ 161–284) (repealed 1976)). The Land Act further provided for the sale of public lands and issuance of land patents. *United States v. Healey*, 160 U.S. 136, 137 (1895) (citing 3 Stat. 566, c. 51)).

Claim One alleges the land patents issued to Plaintiffs' predecessors in interest expressly conveyed title to the land together with all appurtenances thereof that existed by virtue of state law at the time of conveyance, which Plaintiffs assert included the rights-of-way claimed here. (Dkt. 56 ¶¶ 37-43, 51-56); (Dkt. 62 at 6-10).[10] On this motion, Defendant argues Claim One fails to state a claim because state law cannot grant rights in federal land, and because land patents do not implicitly create rights-of-way. (Dkt. 59, 63). For the reasons discussed below, the Court finds Plaintiffs have failed to state a plausible claim.

Plaintiffs own land irrigated by the diversion and ditches that are the subject of this lawsuit. The land upon which the diversion and ditches are located is federal land. The federal land was reserved in 1906, prior to the time Plaintiffs' predecessors received land patents for their parcels and prior to construction of the diversion and ditches, and it

---

[10] Plaintiffs' brief refers to the Carey Act, 43 U.S.C. § 641. (Dkt. 62 at 7-8). However, the Carey Act does not apply to Plaintiffs' claims in this case, as it concerns land grants to states, not individuals. For that reason, it is not discussed herein. The Court recognizes the general concept asserted by Plaintiffs – that the land patent statutes and the Carey Act were enacted to encourage irrigation and settlement of the desert lands in the West. Nevertheless, the allegations that the land patents conveyed easements for the diversion and ditches fail to state a claim for the reasons stated herein.

remains federal land to this day.[11] As such, only Congress has the authority to dispose of the property owned by the United States. U.S. Const., Art. IV, § 3, cl. 2 ("Congress shall have the Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."). "Courts normally construe federal land grants narrowly, under a longstanding 'rule that unless the language in a land grant is clear and explicit, the grant will be construed to favor the [granting] government so that nothing passes by implication.'" *Lyon v. Gila River Indian Community*, 626 F.3d 1059, 1072 (9th Cir. 2010) (quoting *Fitzgerald Living Trust v. United States*, 460 F.3d 1259, 1265 (9th Cir. 2006); and citing *McFarland v. Kempthorne*, 545 F.3d 1106, 1112 (9th Cir. 2008)).

State law cannot create an easement or rights-of-way on federal land. *McFarland*, 545 F.3d at 1111 (citing *Superior Oil Co. v. United States*, 353 F.2d 34, 37 n. 4 (9th Cir. 1965) ("Federal law governs a claim of easement over lands owned by the United States."); *Utah Power & Light Co. v. United States*, 243 U.S. 389, 403-04 (1917) (rejecting the assertion that lands of the United States are subject to the jurisdiction, powers, and laws of the state in which they are located and holding that rights in federal lands can only be conveyed through acts of Congress). Likewise, any water rights held by Plaintiff do not confer an easement across federal land for the ditches. *Utah Power &*

---

[11] The land where the diversion and ditches are located was reserved in 1906, when the Sawtooth National Forest was created, and Plaintiffs do not allege otherwise. U.S. STATUTES AT LARGE, 59 Proclamation, Nov. 6, 1906, 34 Stat. 3260. Plaintiffs' predecessors in interest entered their lands as early as 1905 and, thereafter, constructed the diversion and ditches to divert water to their land parcels. (Dkt. 56 ¶¶ 37-42). The land patents for the parcels now owned by Plaintiffs were all issued after 1913. (Dkt. 56 ¶¶ 37-42).

*Light Co.*, 243 U.S. at 411 (noting rights-of-way through lands of the United States is a different matter from water rights); *Baker Ranches*, 625 F.Supp.3d at 1100-01 (observing the "well-established principle" that "the right to convey water is distinguishable from the right to use water," in a case involving the 1866 Act); *Pine River Irr. Dist. v. United States*, 656 F.Supp.2d 1298, 1304 n. 7 (D. Colo. 2009). Thus, no easements or rights-of-way were created by virtue of Idaho law that were conveyed as appurtenances with the land patents. Plaintiffs' contentions of easements to the diversion and ditches on reserved federal land based on Idaho laws and customs prior to the issuance of the land patents, therefore, fails to state a claim as a matter of law. (Dkt. 56, 62). Consequently, no easements existed that could have been passed as appurtenances when the land patents were issued.

Further, the land patents may grant an existing easement as an appurtenance thereof, but they cannot create an easement. *McFarland*, 545 F.3d at 1111 (concluding that "unless an easement existed at the time of the grant [under the Homestead Act], McFarland holds no easement.") (citing *Jenks*, 129 F.3d at 1355; *Fitzgerald Living Trust*, 460 U.S. at 1267 ("While the word 'appurtenance' will carry with it an existing easement, it will not create the easement."). Thus, the "appurtenance thereof" language of the land patents issued to Plaintiffs' predecessors in interests did not create or convey easements that were not established at the time of conveyance. As discussed above, state law cannot create an easement on federal land. Therefore, the easements that Plaintiffs allege arose under state law the diversion and ditches, did not exist as a matter of law. Thus, no easements appurtenant to the land were conveyed with the land patents.

**MEMORANDUM DECISION AND ORDER – 16**

Plaintiffs' further assertion that the United States knew the diversion and ditches existed and were in use when it granted the land patents does not state a plausible claim of property rights to the diversion and ditches. (Dkt. 62 at 9-10). Nor does the existence of the diversion and ditches at the time the land patents were issued, alone, evidence a vested easement or rights-of-way. Land patents do convey or create vested rights-of-way or access over public lands. *Fitzgerald Living Trust*, 460 F.3d at 1265, 1267 (The "Homestead Act did not grant settlers a vested property right of access over public lands to their homesteads" and "Congress did not imply an easement over public lands into the 1862 Homestead Act."). "In a public grant nothing passes by implication, and unless the grant is explicit with regard to the property conveyed, a construction will be adopted which favors the sovereign." *McFarland*, 545 F.3d at 1112 (quoting *Albrecht v. United States*, 831 F.2d 196, 198 (10th Cir. 1987)); *Fitzgerald Living Trust*, 460 F.3d at 1267.[12] Thus, allegations that the United States knew the diversion and ditches existed prior to and at the time the land patents were issued, even if true, fail to state a claim. Rather, there are other federal statutes that provide processes for obtaining easements, rights-of-

---

[12] Plaintiffs claim they obtained "express" easements, arguing the easements existed by virtue of Idaho law prior to the issuance of the land patents and, therefore, the easements were expressly conveyed by the "appurtenance thereof" language of the land patents. (Dkt. 62 at 6-10). Indeed, Plaintiffs refute assertions that their easements arose by implication. (Dkt. 62 at 7). Nevertheless, Plaintiffs' allegations and arguments suggest the possibility of an implied easement – e.g., because the United States knew the diversion and ditches existed when they issued the patent, the rights-of-way were included as appurtenances to the land patents, if not explicitly at least by implication. (Dkt. 56 ¶ 54) (Claim One alleging rights-of-way by "patent deeds conveying title, including any and all appurtenances, whether expressly stated <u>or otherwise</u>.") (emphasis added). The Court has addressed all of Plaintiffs' claims and arguments raised accordingly.

way, and rights of access on federal lands. *See e.g.*, 43 U.S.C. § 661; 1891 Act, 43 U.S.C. § 946; FLPMA, 43 U.S.C. § 1761. The federal statute relevant to Claim Two is addressed below.

For the reasons stated above, the Court finds Plaintiffs have failed to state a plausible claim to quiet title in the diversion and ditches based on the land patent statutes. Accordingly, Defendant's motion to dismiss will be granted as to Claim One. The dismissal will be with prejudice, as Plaintiffs have not identified any facts they could allege that would support their claims of vested rights-of-way arising under the land patent statutes.

## B. Claim Two – 1891 Act

The 1891 Act provided grants of rights-of-way through public lands and reservations of the United States to ditches and canals used for irrigation or drainage purposes. 43 U.S.C. §§ 946-948; *Kern River Co. v. United States*, 257 U.S. 147, 151 (1921).

On this motion, Defendant argues Plaintiffs have failed to state a claim quieting title to the diversion and ditches under the 1891 Act because the Third Amended Complaint does not allege Plaintiffs' predecessors submitted proper applications for the claimed rights-of-way, and does not allege they sought or obtained the approval of the Secretary of the Interior or the United States Department of Agriculture. (Dkt. 59 at 15-19); (Dkt. 63 at 5-10). Plaintiffs dispute that an application and approval are required to obtain rights-of-way under the 1891 Act, and argue the agency regulations cannot override or conflict with the language of the statute. (Dkt. 62 at 11-16).

Instead, Plaintiffs assert that the unambiguous language of the statute allows individuals to submit maps to the Department of Interior and does not require Secretarial approval, in contrast to the requirements for a ditch company, pointing to the following language in Section 948:

> "If such ditch, canal, or reservoir has been or shall be constructed by an individual or association of individuals, <u>it shall be sufficient for such individual or association of individuals to file with the Secretary of the Interior, and with the officer, as the Secretary of the Interior may designate, of the land office where said land is located, a map of the line of such canal, ditch, or reservoir</u>...."

(Dkt. 62 at 11-13); 43 U.S.C. § 948 (emphasis added). Plaintiffs maintain their predecessors complied with the 1891 Act by filing maps to the government land office with their land patent applications, and that the USFS was aware the diversion and ditches existed and were being used to irrigate their predecessors' lands. (Dkt. 56 ¶¶ 57-69); (Dkt. 62 at 11-16).[13] Further, Plaintiffs contend that their claimed rights-of-way vested upon construction. (Dkt. 62 at 14-16).

---

[13] As with Claim One, Claim Two alleges the USFS knew the diversion and ditches had been constructed and were in use at the time the land patents were granted as a basis for finding rights-of-way under the 1891 Act. (Dkt. 56 ¶¶ 62-67); (Dkt. 62 at 14-15) (arguing the inspection of the ditches and approval of the land patents satisfied the requirements of the 1891 Act). However, Plaintiffs have not alleged that the land patents here expressly conveyed rights-of-way to the diversion and ditches at issue in this matter, aside from asserting the rights-of-way were included as "appurtenances thereof." (Dkt. 56). Again, conveyances of public lands must be explicit, nothing passes by implication; and federal rights-of-way statutes are strictly construed in favor of the United States. *Caldwell v. United States*, 250 U.S. 14, 20-21 (1919). Thus, allegations that the USFS knew the diversion and ditches existed and were in use at the time the United States granted the land patents, even if true, do not state a plausible claim of rights-of-way under the 1891 Act.

Each of Plaintiffs' arguments have been squarely rejected by other courts. *See Baker Ranches*, 625 F.Supp.3d at 1108-1112; *Pine River*, 656 F.Supp.2d at 1312-21. While *Baker Ranches* and *Pine River* are not binding, this Court finds the reasoning of the decisions instructive and consistent with the Court's own analysis.

Obtaining rights-of-way under the 1891 Act required the submission of certain materials and approval of the Secretary of the Interior and/or the Department of Government having jurisdiction of any such reservation. 43 U.S.C. §§ 946-948; *Baker Ranches*, 625 F.Supp.3d at 1108-11; *Pine River*, 656 F.Supp.2d at 1313-21. The plain language of the 1891 Act conditioned grants of rights-of-ways on the submission of certain materials and approval by the Government, stating: "all maps of location shall be subject to the approval of the department of the Government having jurisdiction of such reservation…." 43 U.S.C. § 946. The filing and approval requirements for obtaining 1891 Act rights-of-way, applied to individuals as well as entities:

> The provisions of sections 946 to 949 of this title shall apply to <u>all</u> canals, ditches, or reservoirs, heretofore or hereafter constructed, <u>whether constructed by corporations, individuals, or association of individuals</u>, on the filing of the certificates and maps therein provided for.

43 U.S.C. § 948 (emphasis added). The Department of the Interior regulations are in accord with the statute, requiring application and approval of rights-of-way through federal lands. 36 Interior Dec. 567 (1908). Critically here, approval by the Secretary of the Interior is required for 1891 Act rights-of-way to be vested. *Kern River Co.*, 257 U.S. at 151 (1891 Act "rights of way were to be obtained by making application at the local land office and ultimately securing the approval by the Secretary of the Interior of a map

of the ditch, canal or reservoir…The grant was to become effective when the approval was given"); *Western Watersheds Proj. v. Matejko*, 468 F.3d 1099, 1103 (9th Cir. 2006) ("[T]he Act of [1891], provided for a vested federal right-of-way for irrigation upon approval of a map by the Secretary of the Interior.") (citing *Utah Power & Light Co.*, 243 U.S. at 406-07); *Baker Ranches*, 625 F.Supp.3d at 1109-1111; *Pine River*, 656 F.Supp.2d at 1313-1321. Further, the rationale underlying the vesting by construction theory asserted by Plaintiffs has likewise been rejected. *Baker Ranches*, 625 F.Supp.3d at 1109-1111; *Pine River*, 656 F.Supp.2d at 1316-1321.

Applying the reasoning stated above and having carefully reviewed the pleading and Plaintiffs' arguments, the Court finds Plaintiffs have failed to state a quiet title claim to the rights-of-way under the 1891 Act. Assuming for purposes of this motion that submitting maps with the land patent applications was sufficient, which is not a given, the Third Amended Complaint contains no allegations that the maps submitted by Plaintiffs' predecessors were approved as 1891 Act rights-of-way by the Secretary of the Interior or the department of the Government having jurisdiction. 43 U.S.C. § 946.

Instead, the Third Amended Complaint alleges that at the time the land patents were granted, the USFS was aware the diversion and ditches had been constructed and were carrying water, and that the diversion and ditches received 1891 Act rights-of-way upon their completion. (Dkt. 56 at ¶¶ 59-68). Neither granting of the land patent applications nor the USFS' awareness of the diversion and ditches constitutes the approval required under the 1891 Act. Again, grants of public lands must be explicit and are strictly construed in favor of the United States. *Baker Ranches*, 625 F.Supp.3d at

1111 (citing *Caldwell*, 250 U.S. at 20-21, and discussing *Pine River*, *supra*). The land patent statutes did not create easements or rights-of-way and Plaintiffs have not alleged facts showing the land patents here included rights-of-way to the diversion and ditches, for the reasons discussed above in Claim One. Further, vesting by completion does not establish rights-of-way under the 1891 Act. *Baker Ranches*, 625 F.Supp.3d at 1109-1111; *Pine River*, 656 F.Supp.2d at 1316-1321. For these reasons, the Court finds the allegations in the Third Amended Complaint, even if true, fail to state a plausible claim to quiet title to the claimed rights-of-way under the 1891 Act.

Further, Plaintiffs are unable to allege facts that would cure the pleading. During the hearing, Plaintiffs' counsel conceded that no approval from either the Secretary of the Interior or the Department of Agriculture had been obtained for the rights-of-way claimed under the 1891 Act. Therefore, no facts appear to exist which Plaintiffs could allege that would plausibly state a claim for rights-of-way under the 1891 Act. Accordingly, Claim Two will be dismissed with prejudice.

## **ORDER**

THEREFORE IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (Dkt. 59) is **GRANTED IN PART AND DENIED IN PART** as follows:

1.  The Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is **DENIED**.

2.  The Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is

    **GRANTED**. Claims One and Two are **DISMISSED WITH PREJUDICE** and

    without leave to amend.[14]

DATED: May 20, 2024

_____
Honorable Debora K. Grasham
United States Magistrate Judge

---

[14] Plaintiffs have not requested nor articulated any basis for allowing leave to amend. (Dkt. 62). Nevertheless, the Court has considered whether amendment is warranted and finds it would be futile. *Unified Data Servs., LLC v. Fed. Trade Commission*, 39 F.4th 1200, 1208 (9th Cir. 2022) ("[L]eave to amend should be given, even sua sponte, if amendment could cure a pleading defect."). The premises underlying Plaintiffs' claimed rights-of-way are contrary to the statutes upon which the claims are based, such that it does not appear they can be cured by further amendment.